UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JANE DOE and JOHN DOE,  :
Co-Administrators of the Estate of A.A.,  :
              Plaintiffs,  :
                                            :
v.  :    **OPINION AND ORDER**
                                            :
BEDFORD CENTRAL SCHOOL DISTRICT;  :    18 CV 11797 (VB)
DR. CHRISTOPHER M. MANNO; SUSAN  :
OSTROFSKY; HELAYNA HERSCHKORN;  :
and STEPHEN QUINN,  :
              Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiffs Jane Doe and John Doe,[1] Co-Administrators of the Estate of A.A., bring this action against defendants Bedford Central School District, Dr. Christopher M. Manno, Susan Ostrofsky, Helayna Herschkorn, and Stephen Quinn, alleging violations of various federal and state laws in connection with A.A.'s educational needs and his December 18, 2017, suicide.

Now pending is defendants' motion to dismiss the complaint for failure to state a claim and for lack of subject matter jurisdiction. (Doc. #42).

For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

---

[1]     The Court has permitted plaintiffs to proceed pseudonymously. (Doc. #24).

I.  A.A.'s Individualized Education Program

The Individuals with Disabilities Act ("IDEA") obligates schools to provide all disabled students with an Individualized Education Program ("IEP"), setting forth each student's educational requirements, and measurable educational and functional annual goals.

At age four, A.A. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"). For this reason, it was determined that A.A. required special education and related services. Accordingly, A.A. received annual IEPs for his educational needs.

During the 2017–2018 school year, A.A. was an eighth-grade student at Fox Lane Middle School ("Fox Lane") in Bedford, New York, part of the Bedford Central School District (the "District"). A.A.'s IEP for the 2017–2018 school year noted his ADHD diagnosis, and recommended "consistent parent teacher communication," and for A.A. to "practice strategies to manage emotional stress." (Compl. ¶¶ 25, 29, 30). Further, the IEP required "teachers and counselor/psychologist" to "call or email [John or Jane Doe, A.A.'s] parents, as needed, in order to notify [them] of any changes in [A.A.'s] behavior."
(Compl. ¶ 31).

The District, District Superintendent Manno, and Fox Lane Principal Ostrofsky "were responsible for ensuring that [Fox Lane] complied with student IEPs." (Compl. ¶ 32).

On October 22, 2017, A.A. received a psychiatric evaluation at Fox Lane.

In November 2017, A.A.'s progress report noted he "was making less than anticipated progress" and "was initially apprehensive about attending counseling sessions." (Compl. ¶ 28).

II.  Bullying Incidents

A.A. was bullied at Fox Lane during the fall of his eighth-grade year. First, in October 2017, two classmates attempted to push A.A. over a stairwell railing. A.A. reported the incident

2

to a librarian, who informed administrators. Non-party Assistant Principal Mary Harrison told Jane Doe the two classmates would face severe consequences. The classmates received two-day suspensions.

Jane Doe informed Fox Lane psychologist Herschkorn the incident was "traumatic" for A.A. (Compl. ¶ 41).

In November 2017, a classmate shoved A.A. into the side of a school bus. Jane Doe reported the incident to Herschkorn and Harrison.

Several weeks later, a classmate made a crude comment to A.A. about B.B., A.A.'s then-girlfriend. Jane Doe reported the incident to Harrison.

III.   A.A.'s Breakup with B.B. and Subsequent Suicide

A.A. began dating his classmate B.B. in November 2017. The two often messaged one another using their Fox Lane school email accounts. Emails sent from school accounts are monitored by Fox Lane and the District, with software alerting administrators if certain words or phrases are used.

On December 6, 2017, A.A. sent B.B. a message from his school email account, in which he described feeling "so depressed." (Compl. ¶ 55). Defendants did not notify plaintiffs of this email.

On December 15, 2017, Ostrofsky informed A.A. and B.B. they were not allowed to exchange personal messages using their school email accounts. Thereafter, A.A. and B.B. continued to message one another using private email accounts. While at school, they used their school-issued laptops and the school's internet server to send messages through their private email accounts. According to plaintiffs, defendants did not monitor students' use of private

3

accounts, including when such accounts were utilized on school-issued laptops or over the school's internet server.

On December 17, 2017, A.A. sent a message to B.B. from his private email account. The message contained obscene language. For example: "WE ARE FUCKING DONE, comprende? Get the FUCK out of my life." (Compl. ¶ 61).

That night, A.A. told plaintiffs that he and B.B. might end their relationship. According to plaintiffs, A.A. did not seem upset by this.

On December 18, 2017, at 7:52 a.m., B.B.'s mother forwarded to defendant Quinn, a counselor at Fox Lane, A.A.'s December 17 email to B.B. Plaintiffs believe Quinn informed Herschkorn and Ostrofsky of this communication before 3:00 p.m. that day.

While at school that morning, A.A. and B.B., using their school-issued laptops and the school's internet server, continued to correspond using their private email accounts. In these messages, A.A. made statements such as, "I fucking hate myself," and "I can't help but screw up my life no matter what goes right for me." (Compl. ¶¶ 76–77).

During their lunch period on December 18, A.A. and B.B. had a public break-up in the school cafeteria. Plaintiffs describe the incident as a large commotion: "A.A. paced the room in obvious distress, unable to sit or speak with friends or staff. A lunch aide who observed the break-up alerted School staff to A.A.'s evident panic." (Compl. ¶ 79).

Following the break-up, A.A. and B.B. exchanged numerous additional private emails during their afternoon classes. A.A.'s messages included the following: "Mr. Life? Can I get a refund please? Mine's broken"; "No one cares"; "[N]o one wants me." (Compl. ¶¶ 84–86).

Sometime before 3:00 p.m., Herschkorn left Jane Doe a voicemail:

Hi Mrs. [Doe], it's Helayna Herschkorn. Hope you're doing well. Couple things I wanted to talk to you about and I'll be here for, um, a little while longer, probably

until 4 o'clock or so if you want to give me a call back today. My number is [].
[O]kay, thanks, I look forward to catching up with you, bye.

(Compl. ¶ 89).

Around 3:00 p.m., Herschkorn called and spoke with John Doe. Shortly thereafter, Jane Doe returned Herschkorn's call.

During both calls, Herschkorn emphasized a concern for B.B.'s well-being. She did not, however, notify plaintiffs of A.A.'s December 17 email, which had been forwarded by B.B.'s mother to Quinn earlier that day, nor did Herschkorn describe the lunchroom break-up as a public melt-down. Rather, Herschkorn told plaintiffs to tell A.A. to keep his distance from B.B.

During the calls, Herschkorn also apologized to plaintiffs for the delay in sending them a copy of A.A.'s October 22, 2017, psychological evaluation, which she assured them was in the mail.

Between 3:00 p.m. and 3:30 p.m., A.A. saved four draft emails using his school email account. All four messages contained the word "SUICIDE" in the subject line. The complaint does not allege A.A. actually "sent" any of these draft messages. (Compl. ¶¶ 115–117).

Just after 4:00 p.m., A.A. sent an email to B.B. from his private email account. The subject line read "Suicide"; the body:

> (Number 9!) Look him in the eye, aim no higher, summon all the courage you require, then count! (1, 2, 3, 4, 5, 6, 7, 8, 9! Number 10 paces, FIRE!) . . . . Sorry [B.B.], but this ones on you. I wish I could say that it wasn't your fault, but who am I kidding. . . . It's totally your fault. Kill yourself so you can come down to hell where I am and apologize.

(Compl. ¶¶ 66, 121).

B.B. showed this message to her mother, who forwarded it to Quinn at 4:15 p.m. B.B.'s mother added: "[B.B.] received this email from [A.A.] this evening. I feel that this kid needs

5

some serious help, and he needs to stay away from [B.B.]. Please help me with this."
(Compl. ¶ 65).

Around 4:30 p.m., Jane Doe went to the basement of her home to check on A.A. She found A.A. hanging by his neck from the ceiling. A.A. was pronounced dead two hours later.

Weeks after A.A.'s death, plaintiffs received A.A.'s October 22 psychological report in the mail. The report described A.A.'s assessment as "yield[ing] concerns in the 'at risk' range for depression symptoms," and noted A.A. sometimes felt "that life is not worth living" and "like his life is getting worse and worse." (Compl. ¶ 107).[2] The report noted A.A.'s indications that he "almost always feels stressed" and "often feels anxious, sad, depressed, and lonely." (Compl. ¶ 108).

On March 16, 2018, plaintiffs filed a notice of claim against defendants in accordance with N.Y. Gen. Mun. Law § 50-i. On June 5, 2018, plaintiffs testified at a pre-litigation hearing pursuant to N.Y. Gen. Mun. Law § 50-h.

## DISCUSSION

I. <u>Legal Standards</u>

   A. <u>Rule 12(b)(1)</u>

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." <u>Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont</u>, 565 F.3d 56, 62 (2d Cir. 2009).[3] A cause of action

---

[2] Although plaintiffs did not receive the written report until January 2018, they admit Herschkorn contacted them by phone, on or around the date the evaluation was administered—October 22, 2017—and noted A.A. "sometimes" felt that "life was not worth living." (Doc. #47-1 at 72, 78–79).

[3] Unless otherwise indicated, case quotations omit all citations, internal quotation marks, footnotes, and alterations.

"is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011). The party invoking the Court's jurisdiction bears the burden to establish that jurisdiction exists. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

When deciding whether subject matter jurisdiction exists at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).

B. Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

II. Application

Defendants contend plaintiffs have failed adequately to plead their two claims arising under federal law, and therefore, those claims should be dismissed. Because of this, defendants further contend the Court should dismiss plaintiffs' remaining claims for want of subject matter jurisdiction.

Accordingly, the Court first addresses defendants' Rule 12(b)(6) arguments respecting plaintiffs' federal claims.

A. Section 1983 Substantive Due Process Claim

Defendants argue the complaint fails to state a Section 1983 substantive due process claim against Manno, Ostrofsky, Herschkorn, and Quinn.[4]

The Court agrees with defendants.

To state a substantive due process claim, a plaintiff must allege that the complained-of state action compromised a constitutionally-protected liberty or property right, and the state action that deprived plaintiff of that interest was oppressive or arbitrary. MC v. Airlington Cent. Sch. Dist., 2012 WL 3020087, at *5 (S.D.N.Y. July 24, 2012). The allegations must demonstrate more than mere conduct that is incorrect or ill advised. Cunney v. Bd. of Trs. of Grand View, 660 F.3d 612, 626 (2d Cir. 2011). Indeed, substantive due process "is the right to be free of arbitrary government action that infringes a protected right." O'Connor v. Pierson, 426 F.3d 187, 200 n.6 (2d Cir. 2005) (emphasis in original).

---

[4] The complaint does not allege a substantive due process claim against the District. Accordingly, the Court need not address defendants' argument that the complaint does not state a claim for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).

8

"As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). However, the Second Circuit recognizes two separate and distinct theories under which a state actor's failure to protect against private violence can violate substantive due process. See Benzman v. Whitman, 523 F.3d 119, 127 (2d Cir. 2008). Plaintiffs assert that one of these theories—"state-created danger" liability—applies on the facts alleged.

State-created danger liability "turns on whether the state conduct contributing to the victim's injury was 'affirmative,' which can give rise to liability, or 'passive,' which cannot." Golian v. N.Y.C. Admin. for Children Servs., 282 F. Supp. 3d 718, 730 (S.D.N.Y. 2017) (citing Matican v. City of New York, 524 F.3d 151, 157 (2d Cir. 2008)). "The State affirmatively creates a victim's danger when its agents communicate, explicitly or implicitly, to a third party encouragement or official sanction to attack the victim, usually including an affirmation that the third party may attack the victim with impunity." Id. (citing Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 429–430 (2d Cir. 2009)).

If a plaintiff's allegations satisfy the state-created danger theory of liability, the plaintiff must also show that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matican v. City of New York, 524 F.3d at 155 (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998)). Without such showing, a plaintiff cannot maintain a substantive due process claim. Id. Moreover, the Second Circuit instructs district courts to apply state-created danger liability regarding a substantive due process claim "with considerable stringency." Benzman v. Whitman, 523 F.3d at 127.

Here, plaintiffs dispute the proper test for affirmative versus passive conduct under this theory. Relying on Lombardi v. Whitman, 485 F.3d 73, 81 (2d. Cir. 2007), as well as case law from outside this Circuit, plaintiffs assert state-created danger liability requires no more than showing the state actors' conduct contributed to or increased the likelihood that the victim would be unsafe or subject to foreseeable danger.

The Court is not persuaded. In Lombardi, the Second Circuit recognized "some support for the idea that a substantive due violation can be made out when a private individual derives a false sense of security from an intentional misrepresentation by an executive official if foreseeable bodily harm directly results." Lombardi v. Whitman, 485 F.3d at 81. Yet there, the Circuit "put aside the vexed issue of causation," and affirmed dismissal of plaintiffs' substantive due process claim because the "conduct alleged, even assuming causation, [did] not shock the conscience." Id.

Lombardi's dicta notwithstanding, the Second Circuit "has always" required a state agent's encouragement or official sanction of private violence to sustain an actionable substantive due process claim. Golian v. N.Y.C. Admin. for Children Servs., 282 F. Supp. 3d at 730–31 (collecting cases). Indeed, in 2009, the Second Circuit "reaffirmed that '[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates . . . official sanction of private violence' or if the state actor 'affirmatively encouraged' third-party violence." Id. at 730 (emphasis in original) (quoting Okin v. Vill. of Cornwall-On-Hudson Police Dep't, 577 F.3d at 429, 430). This standard governs, and any cases outside this Circuit on which plaintiffs rely have limited relevance.

In the instant case, the complaint does not contain allegations sufficient to state a claim respecting state-created danger liability. Defendants did not "communicate, explicitly or

10

implicitly, to a third party encouragement or official sanction to attack the victim." See Matican v. City of New York, 524 F.3d at 157. On the contrary, the conduct alleged is best described either as passive failures to effectively implement A.A.'s IEP or, simply, negligence. Indeed, there is no indication that defendants engaged in affirmative conduct to cause harm to A.A. or plaintiffs. To this point, telling are plaintiffs' overlapping state law claims against defendants, which sound in negligence. See Golian v. N.Y.C. Admin. for Children Servs., 282 F. Supp. 3d at 732.

Moreover, plaintiffs have not plausibly alleged that defendants' conduct rises to the conscience-shocking level required to state a substantive due process claim. See Chambers v. N. Rockland Cen. Sch. Dist., 815 F. Supp. 2d 753, 763 (S.D.N.Y. 2011) (quoting Pena v. DePrisco, 432 F.3d 98, 112 (2d Cir. 2005) (noting state action resulting in bodily harm is not oppressive or arbitrary "unless the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.")).

Whereas intentional infliction of injury "unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level," liability for harm caused by negligent conduct alone "is categorically beneath the threshold of constitutional due process." Cty. of Sacramento v. Lewis, 523 U.S. at 849. Indeed, "[m]aking a bad decision or acting negligently is not the sort of 'conscience shocking' behavior that violates the Constitution." MC v. Airlington Cent. Sch. Dist., 2012 WL 3020087, at *5 (citing Cty. of Sacramento v. Lewis, 523 U.S. at 849).

Here, defendants' failures to respond to certain incidents of bullying, taking plaintiffs' assertions as true, "while highly unfortunate, do[] not rise to the level of 'egregious conduct . . . so brutal and offensive to human dignity as to shock the conscience.'" Smith v. Guilford Bd. of

11

Educ., 226 F. App'x 58, 62 (2d Cir. 2007) (summary order) (quoting Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir. 2002)).

Moreover, defendants' failures to monitor students' use of private email accounts (as opposed to school email accounts) when utilized on school-issued laptops or over the school's internet server, turns on whether defendants owed such duty in the first place. Although the complaint mentions defendants' duty to monitor school-issued email accounts, and alleges facts demonstrating defendants did monitor such accounts, it contains no plausible allegations that defendants were required to monitor use of private email accounts, even when used on school-issued laptops or over the school's internet server. As such, these allegations fail to demonstrate affirmative conduct that shocks the conscience.

Finally, plaintiffs' own allegations and Section 50-h hearing testimony belie their claim that defendants' conduct rose to a conscience-shocking level. For example, although plaintiffs did not receive by mail A.A.'s October 2017 psychological report until January 2018, Herschkorn called plaintiffs on the day of the evaluation, or shortly thereafter, to discuss the evaluative findings, including that A.A. "sometimes" felt that "life was not worth living." (Doc. #47-1 at 72, 78–79). Moreover, Herschkorn placed two calls to plaintiffs on December 18 to discuss A.A.'s demeanor at school. And although plaintiffs take issue with the content of the December 18 calls, that Herschkorn initiated these communications undermines the plausibility of the assertion that she and others concerted a campaign of misrepresentation, in a deliberately indifferent manner, to obscure A.A.'s behavioral changes.

This is a tragic case. But the allegations in the complaint, even taken as true, fall well short of illustrating official conduct "truly brutal and offensive to human dignity" that shocks the

conscience. Lombardi v. Whitman, 485 F.3d at 81. Having failed to allege such misconduct, plaintiffs' substantive due process claim must be dismissed.

  B. Section 1983 Violation of IDEA Claim

Defendants next argue plaintiffs fail to state a Section 1983 claim against Manno, Ostrofsky, Herschkorn, and Quinn for violation of the IDEA because compensatory and punitive damages are unavailable under the statute, and "there is no remedy for a violation of the IDEA in the present litigation." (Doc. #45 at 21–22).[5]

The Court disagrees.

"The IDEA mandates that states provide disabled children with a 'free appropriate public education.'" MC v. Airlington Cent. Sch. Dist., 2012 WL 3020087, at *8 n.15 (citing 20 U.S.C. § 1400(d)(1)(A)). "Its primary purpose is to ensure that all children with disabilities receive . . . special education and related services designed to meet their unique needs and to assure that the rights of children with disabilities and their parents or guardians are protected." Id. The statute obligates a student's educators and parents to "meet and jointly develop an [IEP] for each year of the child's education." TC v. Valley Cent. Sch. Dist., 777 F. Supp. 2d 577, 599 (S.D.N.Y. 2011) (citing Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d 478, 482 (2d Cir. 2002)). Indeed, "[t]he key element of the IDEA is the development of an IEP for each handicapped child." Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 363 (2d Cir. 2006).

"Although monetary damages generally are not available under the IDEA itself, a plaintiff may recover monetary damages for a violation of the IDEA pursuant to § 1983." Taylor v. Vermont Dep't of Educ., 313 F.3d 768, 786 n.14 (2d Cir. 2002) (citing Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist., 288 F.3d at 483 n.5); TC v. Valley Cent. Sch. Dist., 777

---

[5] The complaint does not allege a Section 1983 IDEA violation claim against the District.

13

F. Supp. 2d at 600 (recognizing the availability of compensatory damages when an administrative remedy under the IDEA is inapplicable, such as when the student has died).

Defendants' arguments on this point are unpersuasive, and the case law on which they rely is inapposite. Here, plaintiffs do not allege a typical claim under the IDEA—that is, whether A.A.'s 2017–2018 IEP satisfied the IDEA's requirement that a disabled child receive a "free appropriate public education." 20 U.S.C. § 1400(c). In other words, plaintiffs do not challenge the adequacy of the IEP. Rather, they allege defendants, acting under color of state law, unlawfully failed to implement and effectuate the IEP, by failing to notify plaintiffs of "changes" in A.A.'s behavior as the IEP specifically required. This is a discrete claim for which a traditional remedy under the IDEA is unavailable, especially given A.A.'s untimely death.

Accordingly, plaintiffs may seek monetary damages for their Section 1983 claim for violation of the IDEA.

Moreover, at this early stage of the case, plaintiffs' allegations, taken as true, state a plausible Section 1983 claim for violation of the IDEA.

For example, plaintiffs allege defendants did not notify them of A.A.'s December 6, 2017, email to B.B., which A.A. sent from his school email account, in which A.A. described feeling "so depressed." (Compl. ¶ 55). Plaintiffs also contend defendants failed timely to notify them of all findings in the October 22, 2017, psychological evaluation, which they received in the mail weeks after A.A.'s death. And they allege defendants failed accurately to describe A.A.'s behavior and emotional state during and following the cafeteria break-up on the day A.A. committed suicide.

For these reasons, plaintiffs contend defendants, in dereliction of their IEP obligations, failed to alert plaintiffs to any, and obvious, changes in A.A.'s behavior, which could have

prevented A.A.'s death.  As a result, plaintiffs plausibly allege defendants, under color of state law, failed sufficiently to inform them of apparent changes in A.A.'s behavior, as required by the 2017–2018 IEP.  Ultimately, plaintiffs may not be able to prove these allegations, but plaintiffs have satisfied their burden to plead a plausible claim.

Finally, the Court is not persuaded that defendants are entitled to qualified immunity at this early stage.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 547 U.S. 800, 818 (1982).  "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law."  Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

As discussed above, plaintiffs have plausibly pleaded facts alleging defendants, despite knowledge of their obligations under A.A.'s 2017–2018 IEP, failed to inform plaintiffs of "any" changes in A.A.'s behavior.  (Compl. ¶ 31).  At this preliminary stage, when plaintiffs' factual allegations must be taken as true, the Court cannot as a matter of law find defendants' actions objectively reasonable.

Accordingly, the Court denies defendants' motion to dismiss plaintiffs' Section 1983 claim for violation of the IDEA.

C.     State Law Claims

Defendants next argue that, because plaintiffs cannot maintain any federal claims, the Court, pursuant to 28 U.S.C. § 1367(c)(3), should decline to exercise supplemental jurisdiction over the complaint's remaining state law claims for negligence and wrongful death.

15

As discussed above, plaintiffs have alleged a plausible Section 1983 claim for violation of the IDEA. Furthermore, plaintiffs' Section 1983 and state law claims all arise from a common nucleus of operative fact, as required for the exercise of supplemental jurisdiction. As such, the Court declines to dismiss plaintiffs' state law claims for want of subject matter jurisdiction.

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' Section 1983 substantive due process claim is dismissed. Their remaining claims shall proceed.

By December 17, 2019, defendants shall file an answer to the complaint.[6]

The Clerk is instructed to terminate the motion. (Doc. #42).

Dated: December 3, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[6] Defendants' request that they be given 30 days to answer the complaint is denied.